UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF LOUISIANA

| | |
|---|---|
| IN RE: | NUMBER |
| **CAROLYN MARTINEZ** a/k/a **CAROLYN RUZICKA** | **01-10828** |
| DEBTOR | CHAPTER 7 |
| **ANGELA MILEY** | ADV. NUMBER |
| PLAINTIFF | **02-1003** |
| V. | |
| **CAROLYN MARTINEZ** a/k/a **CAROLYN RUZICKA** | |
| DEFENDANT | |

### MEMORANDUM OPINION

This matter came before the Court on a Complaint for Declaratory Judgment filed by the Plaintiff, Angela Miley, against the Defendant/Debtor, Carolyn Martinez. The Court heard the statements of counsel, the testimony of witnesses and received documentary evidence at trial on July 2, 2002. Considering the statements made, the evidence offered, the memoranda submitted, the record in the case and the applicable law, the Court will dismiss the Complaint.[1]

---

[1] This Memorandum Opinion constitutes the Court's Findings of Fact and Conclusions of Law in accordance with Bankruptcy Rule 7052.

Despite its title, the Complaint actually seeks to contest the dischargeability of a debt allegedly owed by the Debtor to Miley pursuant to 11 U.S.C. §§523(a)(3)(B) and (a)(2)(A) and (a)(4). Miley's claims arise out of her employment with Trinity Mortgage Company of Dallas ("Trinity Dallas"), the parent company of Trinity Mortgage of Louisiana, Inc. ("Trinity Louisiana"). The Debtor is president of Trinity Louisiana. Trinity Louisiana terminated Miley's employment in June or July of 1999. Miley accepted the company's offer of health insurance coverage under COBRA[2], which allows employees whose employment has been terminated to maintain health insurance for a limited time after termination. The coverage was apparently through Ochsner Health Plan. After commissions owed to her ceased to cover the premiums, Miley made payments to Trinity Louisiana to cover the premiums until April 2000. Miley learned in May 2000, when she applied to have surgery, that her health insurance coverage had been cancelled effective February 2000 because Trinity Louisiana had not paid premiums. Miley testified that she suffers from medical conditions that prevented her from obtaining health insurance after the cancellation.

The Debtor filed her Chapter 7 petition on April 9, 2001. Miley was not listed as a creditor on the original schedules. The bar date for objecting to the dischargeability of a debt was July 30, 2001, and the claims bar date was August 29, 2001. The Debtor received a Chapter 7 discharge on July 31, 2001. Several weeks later, on October 9, 2001, the Debtor filed amended schedules that listed Miley as a creditor. The Debtor does not appear to dispute Miley's claim that she first learned of the Debtor's bankruptcy after the amendment. On January 11, 2002, Miley filed the Complaint initiating this adversary

---

[2] The Consolidated Omnibus Budget Reconciliation Act, 29 U.S.C. §1161, *et seq*.

proceeding.

The evidence indicates that the health insurance that once covered Miley was held by one of the companies, Trinity Louisiana or Trinity Dallas. Miley's checks for the premiums were payable to "Trinity Mortgage", and a December 1, 1999 letter from the Debtor to Miley regarding tardy premium payments was written on letterhead of Trinity Mortgage Co. of Dallas. There was no evidence presented that the Debtor individually was Miley's employer or was the carrier of the health insurance policy. The evidence also showed that, in February or March 2000, Trinity Dallas abruptly ceased paying funds apparently due Trinity Louisiana. This caused Trinity Louisiana to experience cash flow and other financial problems, which in turn caused its failure to pay the insurance premiums, and which ultimately led to the filing of the Debtor's bankruptcy. No party offered evidence of the terms of the COBRA coverage for which Miley had been paying, nor was there evidence of Miley's damages allegedly caused by the Debtor's actions. The parties also agree that Miley has been repaid approximately $439.00, representing the premiums Miley paid for the months of March and April of 2000.

Section 523(a)(3)(B) of the Bankruptcy Code provides that a debt is not dischargeable if it was

> neither listed nor scheduled . . . with the name . . . of the creditor
> to whom such debt is owed, in time to permit —
> \*         \*         \*         \*
> (B) if such debt is of a kind specified in paragraph (2),
> (4) or (6) of this subsection, timely filing of a proof
> of claim and timely request for a determination of
> dischargeability of such debt under one of such
> paragraphs, unless such creditor had notice or actual
> knowledge of the case in time for such timely filing
> and request.

3

Miley's Complaint alleges that the Debtor's obligation to her is of the type specified as non-dischargeable under 11 U.S.C. §§523(a)(2)(A) and (a)(4). Those subsections bar the discharge of a debt incurred by false pretenses, a false representation or fraud or one incurred by fraud or defalcation in a fiduciary capacity, embezzlement or larceny.

Reported opinions differ on the creditor's burden of proof under §523(a)(3)(B). Some courts hold that the creditor need only prove that there was no timely listing or notice or knowledge of the debtor's bankruptcy in order to secure a determination that the debt is not dischargeable. *See, e.g., In re Peloso,* 107 B.R. 31 (Bankr. S.D.N.Y. 1989). Others maintain that the creditor must prove that the debt is non-dischargeable under §523(a)(2), (4) or (6). *See, e.g., In re Waugh*, 198 B.R. 545 (E.D.Ark. 1995); *In re Thompson*, 152 B.R. 24 (E.D.N.Y. 1993); *In re Lochrie*, 78 B.R. 257 (9th Cir. BAP 1987); *In re Padilla*, 84 B.R. 194 (Bankr. D.Colo. 1987). Yet another view is that the creditor must only show that it has a "viable or colorable claim" under §523(a)(2), (4) or (6), and need not prove the merits of the claim. *See, e.g., In re Haga*, 131 B.R. 320, 327 (Bankr. W.D. Tex. 1991).

The majority view is that the creditor must demonstrate the merits of its claim under §523 (a)(2), (4) or (6) to prevail. This approach is in harmony with the presumption in favor of discharge and the debtor's fresh start, and the strict construction of discharge exceptions against the creditor. *See In re Miller*, 39 F.3d 301 (11th Cir. 1994). Also, §523(a)(3)(B) does not create a separate exception to discharge. Instead, it allows time to a creditor that was not listed in the debtor's schedules and received no notice of the bankruptcy until after the applicable bar dates to file a claim or a dischargeability complaint if the creditor chooses to do so. To interpret otherwise would give an unscheduled creditor without notice of the commencement of the bankruptcy a windfall that scheduled creditors could not receive.

Accordingly, Miley must not only show that her claim was unlisted and unscheduled and that she received no notice of the Debtor's bankruptcy until after the bar dates had passed; she must also prove that her claim against the Debtor is non-dischargeable under §523 (a)(2)(a) or (a)(4). The record contains sufficient evidence that Miley was not listed or scheduled in the Debtor's filings and had no timely notice or knowledge of the Debtor's bankruptcy in order to file a timely proof of claim or complaint. However, Miley has not carried the remainder of her burden of proof.

First, the Complaint contained no allegation of embezzlement or larceny, so Miley must be alleging fraud in a fiduciary capacity. Yet, she offered no evidence that the Debtor acted in a fiduciary capacity with respect to her. The evidence indicated that Miley was not even employed by the Debtor individually, but rather by one of the Trinity companies. Nor was there any evidence that the Debtor's status as an officer and shareholder of Trinity Louisiana rendered her personally liable to Miley for any obligation Trinity Louisiana may have had to Miley. Accordingly, Miley has not proven a claim under §523(a)(4).

With respect to the §523 (a)(2)(A) claim, there was credible evidence that the Debtor did not have advance notice that Trinity Dallas was to cut off funding to Trinity Louisana. Indeed, the Debtor testified that she has sued Trinity Dallas as a result of these actions. Miley did not prove that the Debtor knew in advance that no funds would be available to pay health insurance premiums. In fact, the Debtor's uncontradicted testimony was that she and the other Trinity Louisiana employees learned of the insurance cancellation at about the same time Miley did. This all undermines the allegation that the Debtor made any false representations or defrauded Miley by taking premium payments and intentionally failing to pay the health insurance carrier.

5

Nor did the evidence show that the Debtor, individually, had any obligation to provide health insurance coverage to Miley, or the terms and duration of the COBRA coverage Miley actually received through Ochsner. Moreover, because Miley admitted that she was repaid the March and April premiums, the Court is left with no further proof of damages to Miley as a result of the alleged actions of the Debtor. Miley did not prove that the Debtor owes her any debt.

In sum, although Miley has proven the first element of §523(a)(3)(B), she has not proven the second element, that is, the Debtor owes her a debt that is excepted from discharge under §523(a)(2) or (a)(4). Accordingly, Miley's Complaint for Declaratory Judgment filed by Miley will be dismissed. An appropriate Judgment will be entered.

Baton Rouge, Louisiana, September 27, 2002.

**s/ Douglas D. Dodd**
DOUGLAS D. DODD
UNITED STATES BANKRUPTCY JUDGE